# IN THE COURT OF APPEALS OF IOWA

—————————————

No. 25-2050
Filed January 28, 2026

—————————————

**In the Interest of I.C. and O.C., Minor Children,**

**P.C., Father,**
Appellant.

—————————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Michelle Jungers, Judge.

—————————————

**AFFIRMED**

—————————————

Thomas J. Richter of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Tammy L. Banning of Waterloo Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor children.

—————————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

A father appeals the termination of his parental rights to his two children, I.C. and O.C., challenging the grounds for termination and contending termination is not in their best interests. He also requests more time to reunite with his children. After our independent review of the record, we affirm the termination order.[1]

## I.       Facts and Prior Proceedings

Throughout this case, the children's father, Patrick, has been in prison. In 2023 he led police on a high-speed chase with both children in the vehicle. He pleaded guilty to child endangerment, eluding, assault on persons in certain occupations, and criminal mischief. For those crimes, he received concurrent terms not to exceed five years in prison. On top of that sentence, the court revoked his probation for burglary and theft convictions, imposing ten-year and two-year prison terms.

During their father's incarceration, I.C. and O.C. were living with their mother and her aunt. In August 2024, the Iowa Department of Health and Human Services investigated reports that the mother and aunt were using methamphetamine while caring for the children. After that investigation, the court approved the department's request to remove I.C. and O.C. from their home. At first, the department placed the children with their maternal grandmother. Later, the department moved them to the home of their maternal aunt—who had been helping the grandmother care for the children and was a concurrent placement for adoption. According to the

---

[1] We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

social worker, the children were doing well in their aunt's care. At the time of the termination hearing, the aunt was in the process of becoming "a licensed adoptive resource."

The court adjudicated I.C. and O.C. as children in need of assistance that September. Throughout the department's reunification efforts, the mother did not make herself available, nor did she attend any scheduled drug tests. The department tried several times to set up meetings with her, but she either did not respond or would request a family-focused meeting but not follow through.

As for the father, the social work case manager testified, "It wasn't until April of 2025 that I was able to get ahold of him and set up a phone call." Patrick and the case manager agreed to monthly phone calls to check in and see if the department could offer any other services. That contact occurred each month through 2025—except November, when the termination hearing was scheduled. Regarding services for Patrick, the case worker testified that it can be difficult to provide direct services to incarcerated parents, but he did take some action. For example, he "did sign a release for mental health services while he was in prison and he was doing medication management . . . ." The prison also offered parenting classes, but Patrick had difficulty participating in those because he kept "getting in trouble for physical altercations."

Patrick's incarceration made it difficult to develop a relationship with his children. Although he had phone contact with them even before their removal and planned to continue those calls, the case manager testified, "He has struggled with being consistent with those. I do understand that that's because he's gotten in trouble and has lost phone privileges. But they've

always been available to him if he can do them." As for in-person visits, Patrick didn't think it was "appropriate" for the children to see him in prison.

In November 2025, the court held a joint permanency and termination-of-parental-rights hearing. Only the case manager testified. After the hearing, the court terminated Patrick's parental rights to I.C. and O.C. under Iowa Code section 232.116(1), paragraphs (f) and (h) (2025).[2] Patrick appeals.

## II. Analysis

We review termination proceedings under a three-step analysis. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, we evaluate whether the State has proven a statutory ground for termination under Iowa Code section 232.116(1). *Id.* Second, we assess whether termination is in the children's best interests under section 232.116(2). *Id.* Third, we consider whether any circumstance listed in section 232.116(3) precludes termination. *Id.* We only address those steps that the parents dispute. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A. Statutory grounds

Patrick challenges both grounds for termination. He disputes only the final element of each ground: whether there is clear and convincing evidence that the children could not be returned to his custody at the present time. *See* Iowa Code § 232.116(1)(f), (h); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

---

[2] The juvenile court also terminated the mother's rights to her children under Iowa Code sections 232.116(1), paragraphs (e), (f), (h), and (*l*). She does not appeal.

At the time of the termination hearing, Patrick was incarcerated and unavailable to care for his children, then five and three years old. He points out that he could be granted parole. But the board of parole denied his release in July 2025, and whether he would be granted parole in the future is speculative. As the case worker testified, "It's clear at this point in time he's not a placement option for these children. . . . We don't know when he may be a placement option for these children." We find clear and convincing evidence that the children could not be safely returned to Patrick's custody at the time of the hearing.[3]

## B. Best interests

Next, we address Patrick's best-interests claim.[4] In determining best interests, we give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). Patrick claims the "children will benefit from the continuity, stability, and identity tied to their father, especially as he was their primary caregiver prior to his incarceration." He also contends "he can provide the

---

[3] Our caselaw offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102, which discusses transferring the child's custody if staying in the home would be "contrary to the welfare of the child." Many cases cite *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992), which provides a child cannot be returned if it would expose him or her to "any harm amounting to a new child in need of assistance adjudication." But our supreme court often describes the fourth element as the inability to "safely return" children to their parents' custody. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either formulation, the State met its burden of proof here.

[4] Patrick combines the second and third steps—section 232.116(2) and (3)—into one argument. We address them separately in our analysis.

best environment for the children's physical, mental, and emotional condition and needs."

We disagree. Despite the availability of in-person visitation, Patrick didn't want the children brought to the prison because he "didn't think that was appropriate." And although he has phone contact with his children, the record shows he is inconsistent with these calls. The case worker testified at the permanency and termination hearing, "While I know that his phone contact with the children goes well, it is fair to say that he's essentially becoming a stranger to the children."

In contrast, the children have settled comfortably into their aunt's care. They have known her for a long time because she stepped in when the parents were unavailable even before the department's involvement. The girls have a sibling-like relationship with their cousin of a similar age. And "[t]he current placement has been one of the most consistent things for the children throughout their li[ves]." As the case worker testified, "[t]he children just appear to be at home." Under these circumstances, we find termination is in the children's best interests.

## C. Exceptions to termination

Alongside his best-interests argument, Patrick mentions that termination is "not appropriate due to the bond" between him and the children. In the first place, we agree with the State that he did not preserve error under Iowa Code section 232.116(3). He did not make this argument through testimony nor during closing argument. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Even had he preserved error, the exceptions to termination "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). And here, the record does not demonstrate a strong bond between Patrick and the children. So we find no exception applies to preclude termination.

### D. Six-month extension

Lastly, Patrick asks that we give him a chance "to complete any additional services required by the Court, be released from incarceration, and parent the children like he was prior to his arrest." *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter a permanency order under section 232.104). He contends that instead of termination, he should have been granted a six-month extension. *See id.* § 232.104(2)(b). We don't see this as a viable option. To continue placement, section 232.104(2)(b) requires the court to conclude "the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The father's incarceration makes it challenging for us to make this finding. Beyond that, we find his conviction for child endangerment concerning. We are unconvinced that more time would remove the barriers to reunification. And the children have found stability with their aunt and cousin, so it is not in their best interests to wait for permanency.

**AFFIRMED.**